IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

MARIANO J. PIMENTEL          §
                             §
                             §
VS.                          §  CIVIL ACTION NO.4:05-CV-234-Y
                             §
B.N. DEVELOPMENT COMPANY,    §
INC., et al.                 §

ORDER REGARDING MOTIONS
TO DISMISS, FOR CONTINUANCE, AND TO STRIKE

Pending before the Court is Defendants' Motion to Dismiss [doc. # 21], filed June 3, 2005. Also pending before the Court are plaintiff Mariano J. Pimentel's Amended Rule 56(f) Motion to Abate or Continue Defendant's Motion to Dismiss [doc. # 30], filed June 30, and Motion to Strike Affidavits Submitted in Support of Rule 56 Motion [doc. # 41], filed December 27. Having carefully reviewed the motions, responses, and replies, the Court concludes that Defendants' motion to dismiss should be DENIED and Pimentel's motions should be DENIED AS MOOT.

I.   BACKGROUND

On April 8, 2005, Pimentel filed a complaint in this Court on behalf of himself and a class of plaintiffs seeking a declaration that certain real property ("the Seven Properties") located in Tarrant County, Texas, is beneficially owned by the estate of former Philippine President Ferdinand E. Marcos. The complaint also seeks execution on the Seven Properties due to a large judgment in the District Court for Hawaii against the Marcos Estate for human-rights violations committed by the Marcos regime. Defendants are the record

1

owners of the Seven Properties.

Marcos was president of the Republic of the Philippines from 1965 to 1986, at which point he was deposed.  He fled to Hawaii.  After he fled it became apparent that Marcos and his associates had been defrauding the Filipino Republic through use of his official position.  *See Hilao v. Estate of Marcos (In re Estate of Marcos Human Rights Litigation)*, 94 F.3d 539, 542 (9th Cir. 1996).  In light of Marcos's corruption, the Republic's new president, Corazon Aquino, created the Presidential Commission on Good Government ("PCGG"), an official agency charged with recovering the assets of the Filipino Republic from the Marcos family and its associates.  *See id.*  Philippine law provides for the forfeiture to the national treasury of property unlawfully obtained by public officials.  *See id.*

In accumulating and hiding his ill-gotten wealth, Marcos used the services of a financial advisor, Jose Yao Campos.  Pimentel alleges that Campos acquired the Seven Properties for Marcos, placing them in Netherlands Antilles corporations under Campos's control.

In 1986, upon the PCGG's recommendation, the Filipino Republic filed suit ("the 1986 action") in the Southern District of Texas against Marcos, Campos, and other defendants, including most of the defendants in this cause (or a predecessor in interest).  The 1986 action sought a declaration that certain property was beneficially owned by Marcos and a decree forcing the corporations with record title to the property to convey it to the Filipino Republic.

After Marcos's flight to Hawaii, Campos provided assistance to the PCGG.  The PCGG then entered a resolution whereby, in recognition

2

of Campos's assistance, the PCGG granted to Campos and his family criminal immunity and immunity from civil liabilities with respect to all matters arising from a past relationship with Marcos. (Defs.' Mot. App. at 112-13 (PCGG Resolution).)  The resolution also stated that the PCGG, on the basis and in consideration of Campos's disclosures, determined that Campos rightfully and beneficially owned certain property ("the listed property"), a list of which ("Attachment A") was cited in the resolution and attached to an affidavit by Campos. (*Id.* at 114-15.)  The PCGG certified this resolution in 1986. (*Id.* at 140-141 (PCGG Certification).)  The resolution and certification also provided that the Filipino Republic would drop its cause of action in the Southern District of Texas.  In June 1986 the Filipino Republic filed a notice dismissing with prejudice its claims against Campos in the 1986 action.  (*Id.* at 132-133 (Notice of Dismissal).)

In 1987 the Filipino Republic filed a civil complaint in the Sandiganbayan, a Filipino court, against Campos and others for reconveyance, reversion, accounting, and restitution.  Campos moved to dismiss the complaint as to the claims against him based upon the PCGG's provision to him of civil immunity.  The Filipino Republic also filed a motion to drop Campos as a defendant in the action. The Sandiganbayan denied the motions, concluding that, while the PCGG possessed the authority to grant immunity for criminal charges, it lacked that authority in relation to civil actions.  The Filipino Supreme Court reversed that decision, holding that the PCGG had the authority to grant immunity for civil claims. (*Id.* at 148-65 (Supreme

3

Court Order).)

A number of lawsuits were later filed in American courts against the Marcos family for human-rights violations, which cases eventually were consolidated in the district court in Hawaii and certified as a class action suit against the Marcos Estate. *See Hilao v. Estate of Ferdinand Marcos (In re Estate of Ferdinand Marcos, Human Rights Litig.)*, 25 F.3d 1467, 1469 (9th Cir. 1994). That consolidated case resulted in the judgment upon which Pimentel presently moves for declaratory relief and execution upon the Seven Properties.

It is Defendants' position that the Seven Properties were included within the PCGG's determination that the listed properties were beneficially owned by Campos in 1986. Defendants argue that the act-of-state doctrine precludes Pimentel's suit because the Court must defer to the determination made by the PCGG, an arm of the executive branch of the Filipino government. Defendants also contend that dismissal is further warranted because *res judicata* and issue preclusion due to the 1986 action bar this suit.

II. <u>STANDARD OF REVIEW</u>[1]

"[A] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105 (1983) (quoting Wright & Miller, *Federal Practice and Procedure* § 1357 (1969)). The court must accept as true

---

[1] The Court declines to convert Defendants' motion to dismiss into a summary-judgment motion for the reasons stated by Defendants in their filings on the issue.

4

all well pleaded, non-conclusory allegations in the complaint, and must liberally construe the complaint in favor of the plaintiff. *See Kaiser Aluminum*, 677 F.2d at 1050. However, conclusory allegations, unwarranted deductions of fact, or "legal conclusions masquerading as factual conclusions will not suffice to prevent [the granting of] a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993); *see Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997); *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 930 (5th Cir. 1995). A court should not dismiss a complaint for failure to state a claim unless it appears beyond doubt from the face of the plaintiff's pleadings that he can prove no set of facts in support of his claim that would entitle him to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Garrett v. Commonwealth Mortgage Corp.*, 938 F.2d 592, 594 (5th Cir. 1991); *Kaiser Aluminum*, 677 F.2d at 1050.


III. <u>ANALYSIS</u>

    A.   <u>The Act-of-State Doctrine</u>

"Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory." *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897); *see also Philippine Nat'l Bank v. United States Dist. Court (In re*

*Philippines)*, 397 F.3d 768, 772 (9th Cir. 2005).[2]  The doctrine "applies only when [a] dispute implicates the legitimacy of public acts undertaken by a sovereign nation." *Af-Cap Inc. v. Republic of Congo*, 383 F.3d 361, 372 n. 14 (5th Cir. 2004) (citing *Banco Nacional de Cuba v. Sabbatino*, 376 U.S 398, 401 (1964); *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1112-24 (5th Cir. 1985)).  "In the act of state context, even if the defendant is a private party, not an instrumentality of a foreign state, and even if the suit is not based specifically on a sovereign act, [a court] nevertheless [must] decline to decide the merits of the case if in doing so [it] would need to judge the validity of the public acts of a sovereign state performed within its own territory."  *Callejo*, 764 F.2d at 1113 (citing *Sabbatino*, 376 U.S. at 428; *Compania de Gas de Nuevo Laredo v. Entex, Inc.*, 686 F.2d 322, 325-26 (5th Cir. 1982); *Tabacalera Severiano Jorge, S.A. v. Stan. Cigar Co.*, 392 F.2d 706 (5th Cir. 1986)).

The doctrine is one of judicial restraint as opposed to jurisdictional limitation.  *See Sabbatino*, 376 U.S. at 421-423.  "Under the doctrine, the courts exercise jurisdiction but decline to decide certain issues." *Callejo*, 764 F.2d at 1113 (citing *Arango*, 621 F.2d at 1380 (5th Cir. 1980).  Thus, the doctrine operates as

---

[2] The act-of-state doctrine

recognizes that the judicial branch should refrain from exercising its jurisdiction in sensitive foreign policy matters traditionally left to the executive branch.  Thus, it has been said that the act of state doctrine recognizes not only the sovereignty of foreign states, but also the spheres of power of the coequal branches of our government.

*Frolova v. Union of Soviet Socialist Republics*, 558 F. Supp. 358, 360 (N.D. Ill. 1983) (citing *Int'l Ass'n of Machinists v. OPEC*, 649 F.2d 1354, 1359 (9th Cir.1981)); *see also Arango*, 621 F.2d at 1380 (citation omitted).

an issue-preclusion device, foreclosing, in litigation between any
set of parties, judicial inquiry into the validity or propriety of
a foreign government's acts. *Arango*, 621 F.2d at 1380 (citing *Nat'l*
*American Corp. v. Fed. Republic of Nigeria*, 448 F.Supp. 622, 640 (S.D.
N.Y. 1978); *Hunt v. Mobil Oil Corp.*, 550 F.2d 68 (2d Cir. 1977)).
If a suit violates the act-of-state doctrine, dismissal is required.
*See id.* at 1378-81.

When the doctrine is raised in connection with a Rule 12(b)(6)
motion to dismiss,

> the court must be satisfied that there is no set of facts
> favorable to the plaintiffs and suggested by the complaint
> [that] could fail to establish the occurrence of an act
> of state.  To the extent crucial facts pertaining to the
> defense are disputed, or not fully developed in a complete
> record, the reviewing court must be certain that it does
> not leap to conclusions arguable under the unelaborated
> pleadings but which could be refuted through the ordinary
> process of discovery and fact-finding in the district
> court.  To do otherwise is to deny the claimant an
> opportunity to prove his case.

*Ramirez de Arellano v. Weinberger*, 745 F.2d 1500, 1534 (D.C. Cir.
1984), *vacated other grounds*, 471 U.S. 1113 (1985).

**At present**, based upon the current filings on the matter, the
Court cannot conclude that the act-of-state doctrine mandates
dismissal of this case.  First, the Court is not persuaded that the
determination by the PCGG constitutes the act of a sovereign nation.
As stated by the Supreme Court of the Philippines in its order
reversing the Sandiganbayan's conclusion that the PCGG lacked the
authority to grant civil immunity to Campos:

> "[T]he PCGG is not, and never was intended to act as, a
> judge.  Its general function is to conduct investigations
> in order to <u>collect</u> <u>evidence</u> establishing instances of

'ill-gotten wealth;' issue sequestration, and such orders
as may be warranted by the evidence thus collected and as
may be necessary to preserve and conserve custody and
control and prevent their disappearance, loss or dissipa-
tion; and eventually file and prosecute in the proper court
of competent jurisdiction all cases investigated by it as
may be warranted by its findings.  It does not try and
decide, or hear and determine, or adjudicate with any
character of finality or compulsion, cases involving the
essential issue of whether or not property should be
forfeited and transferred to the State because 'ill-gotten'
within the meaning of the Constitution and the executive
orders.  This function is reserved to the designated court,
in this case, the Sandiganbayan.  (Ex. Ord. No. 14)"

(Defs.' Mot. App. at 155 (Filipino S. Ct. Order (quoting *Bataan
Shipyard & Engineering Co., Inc. v. Presidential Commission on Good
Government*, (150 SCRA 181 (1987)) (emphasis in original)).)

The Court concedes that, for a public act to fall within the
act-of-state doctrine, it is not required that the act be judicial
in nature.  Such a requirement would be illogical as many public acts
by foreign powers are committed pursuant to executive power.  The
fact that the PCGG lacks the authority to make judicial findings,
however, is crucial.  As stated above, the PCGG "*does not try and
decide, or hear and determine, or adjudicate with any character of
finality* or compulsion, cases involving the essential issue of whether
or not property should be forfeited and transferred to the State
because 'ill-gotten.'"  *Id.* (emphasis added).  Thus, it is not
unreasonable to infer that the PCGG's determination may not be
eligible for the deference granted to final conclusions by the
Filipino judiciary.  *Cf. In re Philippines*, 397 F.3d at 770 (finding
that the act-of-state doctrine applied to decision by Filipino Supreme
Court).  Instead, the Filipino Supreme Court's order indicates that
the PCGG's authority is prosecutorial in nature, meaning that it may

8

decide whether and under what circumstances it will bring or dismiss charges or claims in the Sandiganbayan.  There is no clear indication that the PCGG's determinations are official acts of state or entitled to preclusive effect; the facts now before the Court imply the opposite.

The PCGG may very well possess the authority to make determinations that are recognizable as public acts by a sovereign nation. The record before the Court, however, does not compel such treatment.[3]

Second, even if the PCGG's determination could be deemed to be a public act by a sovereign nation, the act-of-state doctrine would not apply, **at present**, because there is an insufficient showing that the PCGG determination applies to the Seven Properties.  The PCGG Resolution and Certification did not themselves list the properties beneficially owned by Campos; instead, they relied upon a list of properties included within another document--Attachment A.  (Defs. App. at 114-15 (Resolution); 139-40 (Certification).)  Attachment A contained a list of several Netherlands Antilles corporations that held properties in the United States for the rightful ownership of Campos.  (*Id.* at 105-06 (Campos Sworn Statement).)  Five of the defendants in this suit are listed in Attachment A as Netherlands Antilles corporations owning property for Campos; another defendant,

---

[3] In its decision regarding the PCGG's authority to grant Campos civil immunity, the Filipino Supreme Court did not discuss or issue a ruling as to whether the PCGG possessed the authority to make determinations regarding the ownership of property.  That decision merely discussed the PCGG's power to grant both civil and criminal immunity in relation to prosecution.  Simply because the PCGG can grant immunity--a function completely in line with its prosecutorial powers--however, does not compel an inference that its determination as to Campos's beneficial ownership of the listed properties is entitled to act-of-state-doctrine deference.

who is not listed, has a predecessor in interest on the list (collectively, "the listed defendants"). (*Id.*)

Even if in 1986 the listed defendants did own property in the United States for Campos, however, that does not compel an inference that (1) the Seven Properties were owned by the listed defendants at the time of the PCGG decision; or (2) the listed defendants still own property (specifically, the Seven Properties) for Campos. Absent from the record is any type of evidentiary showing (at least to which the Court was directed) demonstrating either that the Seven Properties were included in 1986 within the listed properties or within the control of the listed defendants or that the listed defendants presently own properties for Campos. Any number of events could have occurred since 1986 that would affect Campos's *present* beneficial ownership. It is possible that Campos freed himself of his ties to the listed defendants. Or, the listed defendants might not have owned some or all of the Seven Properties in 1986. If they did not control the Seven Properties in 1986 and, at some point, no longer owned property for Campos, the listed defendants could have acquired the Seven Properties after the date ties with Campos were severed. It would therefore be irrelevant that the listed defendants are *presently* the record owners of the Seven Properties.

To obtain dismissal of this suit based upon the act-of-state doctrine, Defendants would have to provide, among other things, evidence connecting the 1986 PCGG determination to the present ownership of the Seven Properties. Otherwise, the Court must "leap to conclusions arguable under the unelaborated pleadings but which

could be refuted through the ordinary process of discovery and fact-finding." *Ramirez de Arellano*, 745 F.2d at 1534. This the Court is not permitted to do.

As to the remaining defendant (that is unlisted in Attachment A as a Netherlands Antilles corporation owning property for Campos)-- Jason Development Company, Inc. ("Jason")--Attachment A also states that Campos beneficially owned a "604 acre Mallard Tract in Tarrant County, Texas." (*Id.* at 106). Pimentel's complaint alleges that Jason "is the record owner of a 605 acre parcel of real property located in Tarrant County." (Compl. at 3, ¶ 7.) The description for the property indicates that it is a Mallard tract. (*Id.* at Ex. D.)

Concluding that the Mallard 605-acre tract in Pimentel's complaint is the same one set out in the PCGG's 1986 determination (and thus that the 1986 PCGG determination establishes Campos's present record title to the tract) would require the Court to make several assumptions: First, that the 605-acre tract is the same one referred to in Campos's affidavit. The Court cannot make that assumption. The Court cannot determine or assume that the 605-acre tract described through metes and bounds in the complaint is the same property listed in Attachment A because Attachment A does not contain a metes-and-bounds description. Second, and assuming that they are the same tracts, because Campos beneficially owned the tract in 1986 he must still beneficially own it. Such an assumption is unsupported by the record. Third, that Jason beneficially owns the tract for Campos. Such an assumption is even more tenuous than with the listed

11

defendants because Jason is not one of the Netherlands Antilles corporations listed in Attachment A as owning property for Campos in 1986.[4]

The PCGG rendered its decision twenty years ago.  There is no evidence connecting Campos's beneficial ownership of the listed properties in 1986 with a present ownership of the Seven Properties. Thus, crucial facts pertaining to the act-of-state defense are not fully developed in a complete record before the Court.  *See Ramirez de Arellano*, 745 F.2d at 1534.

Defendants have therefore failed, **at present**, to establish that, because application of the act-of-state doctrine mandates dismissal, there are no set of facts upon which Pimentel could recover.  *See id.*  The Court must not leap to conclusions regarding the applicability of the PCGG determination to the present suit .  "To do otherwise is to deny the claimant an opportunity to prove his case."  *Id.*

Finally, the Court notes that it may conclude that the act-of-state doctrine may apply to this case upon the presentation of the necessary evidence.  Upon the present showing, however, such a conclusion cannot be made.

---

[4] Moreover, the Court notes that:

[t]he act of state doctrine only precludes judicial inquiry into the legality, validity, and propriety of the acts and motivations of foreign sovereigns acting in their governmental roles within their own boundaries; it does not preclude judicial resolution of all commercial consequences stemming from the occurrence of such public acts.

Arango, 621 F.2d at 1380-81.

B.   Preclusion

Defendants raise the affirmative defenses of *res judicata* (claim preclusion) and *collateral estoppel* (issue preclusion) as bars to the present action.  Those issues are, however, premature.  Generally, preclusion is an affirmative defense that should not be raised as part of a 12(b)(6) motion, but should instead be addressed at summary judgment or at trial.  *See Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 Fed. Appx. 662, 664 (5th Cir. 2004) (citing *Moch v. E. Baton Rouge Parish School Bd.*, 548 F.2d 594, 596 n.3 (5th Cir. 1977)); *Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 457 (5th Cir. 1971)  ("as a general rule, actions involving affirmative defenses such as collateral estoppel, may be more amenable to a summary adjudication than others.") (citation omitted).  Dismissal on preclusion grounds is therefore unwarranted.

IV.  CONCLUSION

Therefore, Defendants' Motion to Dismiss [doc. # 21] is DENIED.

Further, Pimentel's Amended Rule 56(f) Motion to Abate or Continue Defendant's Motion to Dismiss [doc. # 30] and Motion to Strike Affidavits Submitted in Support of Rule 56 Motion [doc. # 41] are DENIED AS MOOT.

SIGNED March 9, 2006.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

13